IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| **VICKIE LEE BOWERS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:14-CV-015-BL |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 42 U.S.C. § 405(g), Plaintiff Vickie Lee Bowers seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for supplemental security income (SSI) and disability benefits under Title II of the Social Security Act.

After considering the pleadings, the briefs, and the administrative record, the Court recommends that the Commissioner's decision be reversed and remanded for further consideration.

### Background

Bowers filed an application for disability insurance benefits under Title II of the Social Security Act on September 21, 2010. (Tr. 11, 108-11, 138). Bowers claims she became disabled on September 16, 2010, due to degenerative disc disease, Sjogren's syndrome, Meniere's disease,[1] fibromyalgia, depression, and anxiety. (Tr. 130, 142, 156, 178, 277, 280, 289, 296, 300, 304, 306, 309, 319, 324, 340-43, 358, 360, 363, 368, 369, 371). Previously, Bowers worked as a bus driver,

---

[1] "A disorder characterized by recurrent prostrating vertigo, sensory hearing loss, tinnitus, and a feeling of fullness in the ear associated with generalized dilation of the membranous labyrinth." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 678 (Mark H. Beers, M.D., and Robert Berkow, M.D., eds., 17th ed. 1999).

child care worker, clerk, and a customer service representative. (Tr. 143, 150-55). Bowers completed high school in 1986. (Tr. 136).

Following a hearing on January 08, 2013, an Administrative Law Judge (ALJ) determined on January 28, 2013, that Bowers was not disabled. Specifically, the ALJ found that Bowers' impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she retained the residual functional capacity (RFC) to perform "sedentary work activity limited by detail, but non-complex instructions," and that she could perform her past relevant work. The Appeals Council denied review on February 03, 2014. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Standard of Review

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 17412 (5th Cir. 1990); *Wren v. Sullivan*, 925

F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## Discussion

On appeal, Bowers raises the following issues: (1) whether the ALJ's RFC finding and hypothetical to the vocational expert (VE) were defective because they failed to incorporate functional restrictions relating to Bowers' vertigo and Meniere's disease, and (2) whether the ALJ properly considered Bowers' social limitations in his RFC finding.

After reviewing the record, the ALJ followed the five-step sequential evaluation process and determined that Bowers was not disabled within the meaning of the Social Security Act. At Step 1, the ALJ found that Bowers did not engage in any substantial gainful activity since September 16, 2010. (Tr. 12). At Step 2, the ALJ found that Bowers had the following severe impairments: lower back pain due to degenerative disc disease, fibromyalgia, Meniere's disease, and depression. (Tr. 12). At Step 3, the ALJ found that Bowers did not have an impairment or combination of impairments that met or equaled a listed impairment under the applicable regulations. (Tr. 12). Before proceeding to Steps 4 and 5, the ALJ assessed Bowers' RFC and determined that she retained the ability to perform sedentary work activity limited by detail, but non-complex instructions. (Tr. 19). At Step 4, the ALJ found that Bowers could, in fact, perform

her past relevant work and thus, was not disabled within the meaning of the Social Security Act. Because of this finding at Step 4, a Step 5 evaluation was unnecessary.

# I.

Bowers argues that the ALJ failed to properly consider and incorporate functional limitations from vertigo and Meniere's disease into the RFC determination and subsequently the hypothetical posed to the vocational expert (VE). Specifically, Bowers argues that the ALJ erred when he claimed to accept Dr. Owens' opinion regarding her vertigo attacks but then failed to include any functional limitations in the RFC finding.

The Commissioner maintains that the record does not support a finding that Meniere's disease is a disabling condition. Defendant cites to inconsistencies in clinical findings—namely those related to the quality of her gait,—her continued ability to operate a motor vehicle, inconsistencies in reporting symptoms of vertigo or Meniere's disease at various doctor visits, and the absence of Bowers' physicians' (treating or examining) opinions that Meniere's disease prevented her from working. Additionally, Defendant argues that the ALJ properly considered effects of Meniere's disease by placing limitations accommodating diminished focussing and concentration abilities.

RFC is the most an individual can still do despite her impairments. 20 C.F.R. §§ 404.1545, 404.1520; SSR 96-8p, 1996 WL 374184 (July 2, 1996). In determining RFC, the ALJ considers the individual's ability to meet the physical and mental demands, as well as the sensory and other requirements of the job. 20 C.F.R. §§ 404.1545(a), 416.945(a). "The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8P, 1996 WL 374184 (July 2, 1996) (emphasis in original); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("it is clear that the ALJ must consider all the record evidence and cannot

'pick and choose' only the evidence that supports his position") (citations omitted). The ALJ considers exertional and non-exertional limitations. *See Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001); 20 C.F.R. § 404.1569(a). Mental limitations, such as a limited ability to interact with supervisors and coworkers, may affect a person's ability to carry out certain activities. 20 C.F.R. §§ 404.1545(c), 416.945(c). An ALJ errs when he does not reasonably incorporate all of the disabilities of the claimant in his RFC determination. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Ruling 96-8p makes clear that RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities *on a regular and continuing basis*. SSR 96-8p, 1996 WL 374184 (July 2, 1996). "Regular and continuing basis" means eight hours per day, five days per week, or an equivalent work schedule. *Id.* Usually, the determination whether a claimant can maintain employment is subsumed in the analysis regarding the claimant's ability to obtain employment. *See Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003); 20 C.F.R. § 404.1545; SSR 96-8p. However, when a claimant's impairment is nonexertional, the ALJ must determine whether the claimant's symptoms preclude her from maintaining employment. *Frank*, 326 F.3d at 618; *Watson*, 288 F.3d at 217; *see Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Indeed, the *Singletary* court held that in such circumstances, "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that [s]he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Singletary*, 798 F.2d at 822 (emphasis in original); *see Watson*, 288 F.3d at 217.

In the instant case, the ALJ determined that Bowers "retains the functional capacity to perform sedentary work activity limited by detail, but non-complex instructions." (Tr. 20). In

reaching this conclusion, the ALJ noted that in August 2005, Bowers admitted to being terminated from her job as a receptionist because of her inability to multi-task and missing days due to vertigo episodes. (Tr. 18). The ALJ goes on: "However, she later recanted that her most recent job was in 2009, working as a legal assistant for an attorney. She noted that she left that job because she met her husband and moved." The ALJ then acknowledged that Bowers reported falling daily, suffered from poor concentration, and had hearing problems as a result of vertigo and Meniere's disease. The ALJ noted that although Bowers reported suffering several limitations from Meniere's disease—namely issues with concentration and balance,—the psychological evaluation performed in 2011 found that her short term, long term, immediate memory, and concentration and attention were all good. The ALJ also states that "none of [Bowers'] examining and treating physicians indicated that [she] was unable to work because of her Meniere's disease." (Tr. 18). In explaining his final RFC determination, the ALJ states: "In this case, neither the objective medical evidence nor the testimony of the claimant, in addition to considering non-medical evidence establishes that the claimant's ability to function is so severely impaired as to preclude work at the sedentary level of exertion *due to her fibromyalgia*. Additionally, due to her problems focusing and concentrating, the [ALJ] restricts the claimant to work that is detailed, but non-complex tasks." (Tr. 19) (emphasis added).

Bowers underwent both physical and mental RFC evaluations. (Tr. 420-23, 442-49). Dr. Richard Campa, Ph.D., evaluated Bowers' mental RFC. Dr. Campa opined that Bowers was not significantly limited in a majority of the categories. However, Bowers did suffer moderate limitations in the following: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual with customary

tolerances; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting.

Dr. Randal Reid, M.D., evaluated Bowers' physical RFC, and found that she could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, push and pull an unlimited amount, could occasionally climb, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes or scaffolds. Dr. Reid opined that Bowers' alleged limitations were "not wholly credible as they are not supported by the medical and other evidence in file." (Tr. 447). Dr. Reid based his physical RFC assessment on medical findings of moderate degenerative disc disease, an x-ray of both knees showing "mild medial compartment and patellofemoral osteoarthritis," records from 2011 confirming fibromyalgia, and a struggling gait. Dr. Reid mentioned that although the treating source noted episodic imbalance (vertigo/Meniere's disease), no medical evidence was available since December 2010 so he could not document or evaluate the frequency and duration of the vertigo.

An extensive review of the records show that Bowers was diagnosed with fibromyalgia and Meniere's disease (in addition to the other severe impairments listed above). (Tr. 296, 300, 304, 306, 309, 324, 358, 360, 363, 369, 371, 403-05, 424, 492, 515, 534, 536, 545, 546-55, 571, 575, 576, 577, 578). Reviewing the ALJ's description of Bowers' RFC in conjunction with the medical evidence and state agency medical consultant opinions, it is unclear whether the ALJ fully and fairly considered the functional effects of the vertigo and Meniere's disease. In the RFC explanation, the ALJ notes that "none of [Bowers'] examining and treating physicians indicated that [she] was

unable to work because of her Meniere's disease." (Tr. 18). However, three of Bowers' treating physicians, Drs. Hubbard, Goodnight, and Owens seem to opine differently. Dr. Hubbard reported that she suffered from vertigo attacks more than once per day, frequent tinnitus extreme enough to prevent any significant concentration, and progressive hearing loss. (Tr. 577). Similarly, Dr. Goodnight opined that Bowers suffered frequent vertigo attacks, severe tinnitus that would interfere with concentration, and had hearing loss established by audiometry. (Tr. 576). Dr. Goodnight went on to state that the vertigo attacks were severe, occurred several times per month—more than once per week—and were of an incapacitating nature. (Tr. 576). Last, Dr. Owens reported that Bowers suffers from several vertigo attacks per month, frequent tinnitus attacks of moderate severity, enough to interfere moderately with concentration, had a disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular test, and hearing loss established by audiometry. (Tr. 575). All three treating physicians submitted their opinions in December 2012.

Although none of these physicians explicitly stated that the Meniere's disease prevented Bowers from working, the physicians seem to opine that her symptoms were severe enough to cause functional limitations. The limitations and symptoms described by Bowers' treating physicians suggest that the Meniere's disease could and may interfere with the ability to do sustained work-related activity, as described in SSR 96-8p. Without a more detailed analysis addressing these limitations, it is unclear whether the ALJ properly considered all of the limitations caused by the Meniere's disease. Further, because the RFC determination is flawed, the hypothetical posed to VE is also defective.[2] Thus, the Court **RECOMMENDS** that the case be **REMANDED** for further consideration.

---

[2] A hypothetical question posed to a VE is defective and cannot be relied upon unless: (1) the hypothetical reasonably incorporates "all disabilities of the claimants recognized by the ALJ," and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings

## II.

Bowers also argues that the ALJ failed to properly include her social limitations in the RFC and failed to consider the social limitations in making his Step 4 decision. Specifically, Bowers contends that the ALJ's finding that she had only mild limitations in social functioning is in contradiction to the finding in the psychiatric review technique (PRT), which stated that she suffered moderate limitations in social functioning. Bowers argues that the Step 4 finding flawed because her social functioning limitations prevent her ability to work as a receptionist. Bowers also claims that the ALJ should have elicited testimony from the VE regarding ability to perform the job with social functioning limitations.

Through the first four steps of the sequential evaluation process, the burden rests on the plaintiff to prove that she is, in fact, disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Alexander v. Astrue*, 412 Fed. App'x 719, 720 (5th Cir. 2011); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); *Ellis v. Astrue*, No. 7:09-CV-70-O-BF, 2010 WL 3422872 (N.D. Tex. Jul. 27, 2010). At Step 4, a claimant must show that she is unable to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In making the Step 4 decision, the ALJ uses the claimant's RFC and all other relevant evidence on the record, including medical and non-medical evidence. 20 C.F.R. § 404.1520(a)(4)(iv).

At Step 2 of the sequential evaluation process, the ALJ considers which of the claimant's impairments are "severe" within the meaning of the social security act.[3] When mental impairments

---

and disabilities recognized but omitted from the question)." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Glover v. Barnhart*, 81 Fed. App'x 513, 514-15 (5th Cir. 2003) ("Contrary to [claimant's] contentions, the hypothetical questions posed to the [VE] by the ALJ were not defective, as the questions reasonably incorporated all of the disabilities recognized by the ALJ. . . . Counsel was also given the opportunity to suggest to the VE additional disabilities, including [ones] not recognized by the ALJ's findings."); *Guillen v. Astrue*, 584 F. Supp. 2d 930, 939 (W.D. Tex. 2008).

[3] The applicable social security regulation defines a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

are a factor in determining disability, the ALJ must utilize and consider mandatory steps known as "techniques," which assist in gauging the severity of the mental impairments at Step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a; *White v. Astrue*, No. 4:08-CV-415-Y, 2009 WL 763064 (N.D. Tex. Mar. 23, 2009); *Holmes v. Astrue*, No. 3:11-CV-2634-G (BH), 2013 WL 638830 (N.D. Tex. Jan. 25, 2013). The Step 2 evaluation for mental impairments is conducted as follows:

> First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(2). Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad areas of functioning are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the ALJ determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id.* §§ 404.1520a(d), 416.920a(d). When the ALJ finds no or mild limitation in these four broad areas of mental functioning, the claimant's impairment is generally not found to be severe unless the evidence otherwise indicates more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

*White*, 2009 WL 763064 at *10 (internal footnotes omitted). Once severity is determined, the ALJ then goes on to conduct the Step 3 analysis of whether the severe impairments, alone or in combination, meet or equal any of the listings, thereby warranting a finding of disability. If at Step 3, the ALJ finds that the claimant does not meet or equal a listing, he determines the claimant's RFC, and then goes on to the Step 4 determination. As stated above, the ALJ must consider *all* of a claimant's impairments—severe and non-severe—in determining the RFC. SSR 96-8P, 1996 WL 374184 (July 2, 1996); 20 C.F.R. §§ 404.1545(a)(3), (c), 416.945(a)(3), (c); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *See Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001); 20 C.F.R. § 404.1569(a). Thus, the ALJ also considers a claimant's non-severe mental impairments and accompanying

evidence in determining the RFC and subsequently in the Step 4 analysis. 20 C.F.R. § 404.1520(a)(4)(iv).

Bowers underwent two separate PRT evaluations: the first in May 2007, and the second in June 2011. The PRT conducted in May 2007 concluded that although Bowers suffered from depression, there was insufficient evidence to make a medical determination. (Tr. 277-90). The PRT conducted in June 2011 is more comprehensive. In the second PRT, Dr. Richard Campa, Ph.D., opined that Bowers suffered from depression and pain disorders. (Tr. 406-19). Dr. Campa also concluded that Bowers suffered mild restrictions of activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, and pace, and suffered no episodes of decomposition. (Tr. 416). Dr. Campa went on to state that the alleged limitations were not wholly credible, and not completely supported by the medical evidence on file. (Tr. 418).

Additionally, Bowers underwent a psychological evaluation in April 2011. (Tr. 394-401). During this evaluation, Bowers stated that she applied for disability due to depression, anxiety and Meniere's disease. Bowers admitted that she gets along with others "okay" and described herself as "a people person." (Tr. 397). She went on to state that when she is in a group, her anxiety increases because she is afraid of falling. Bowers admitted that she works in several volunteer positions, such as assisting with the Bang's Mayfest, but had recently faced some difficulty. After a thorough evaluation, Dr. Pennissi Taylor, Ph.D., diagnosed Bowers with chronic pain disorder and depressive disorder. Dr. Taylor did not find that Bowers suffered from any social or anxiety disorders enough to warrant a diagnosis.

In her function report, completed in March 2011, Bowers stated that she frequently spends time with others talking on the phone and watching television. (Tr. 160). Bowers also admitted to

regularly attending church, visiting her in-laws, going to the pharmacy and the doctor's office, and stated that she does not have any problems getting along with family, friends, neighbors, or others. (Tr. 160-61). Bowers did, however, state that she is "not nearly as sociable due to pain, illness, lack of energy[,] and anxiety." (Tr. 161).

At Step 2 of the sequential evaluation, the ALJ found that Bowers' only severe mental impairment was depression. The ALJ went on to find that Bowers did not meet or equal any of the listings and retained the ability to perform sedentary work activity limited by detail, but non-complex instructions. The ALJ also noted that Bowers has a history of and was medicated for depression and anxiety, but no referral was made to any mental health specialists for further evaluation. (Tr. 17). After reviewing the evidence, the ALJ concluded that Bowers had a mild limitation in activities of daily living, mild difficulties in maintaining social functioning, and mild to moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 17). The ALJ also notes that Bowers' statements concerning the impact of her impairments on her ability to work were not entirely credible. (Tr. 18).

It is well settled that an ALJ's findings are granted great deference and unless a court cannot find substantial evidence to support the findings, the Commissioner's decision will not be disturbed. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In light of the evidence found in the records and described above, the Court is of the opinion that the ALJ's finding at Step 4 was supported by substantial evidence.

## Conclusion

In accordance with the foregoing, the Court **RECOMMENDS** that the case be **REVERSED AND REMANDED** for further consideration consistent with findings in Discussion Section I above.

IT IS ORDERED that this case is TRANSFERRED back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 29th day of May, 2015.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**